| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| Bricklayers Insurance and Welfare Fund, Bricklayers Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel Trades International Pension Fund, New York City and Long Island Joint Apprenticeship and Training Fund, International Masonry Institute, Jeremiah Sullivan, Jr., in his fiduciary capacity as Administrator and Chairman of Trustees, Bricklayers Local 1, International Union of Bricklayers and Allied Craft Workers, and Bricklayers Labor Management Committee, | **MEMORANDUM AND ORDER**<br><br>19-cv-2600 (ERK) (RLM) |
| Plaintiffs, | |
| – against – | |
| Alpha Omega Building Corp. and Anthony Frascone, | |
| Defendants. | |

KORMAN, *J*.:

Plaintiffs are a bricklayer union, its benefit funds, and a trustee of the benefit funds. They claim that defendant Alpha Omega Building Corporation, which employed union members, failed to make required payments to the union's benefit funds. Plaintiffs also seek to hold Alpha Omega's president and sole owner, Anthony

1

Frascone, personally liable for some of the missed payments.[1]

The bricklayer union has a collective bargaining agreement that it uses with employers. *See* ECF No. 77-5. Under that agreement, employers must make contributions to the union's pension funds, medical plans, and training programs, as well as deduct from employee wages their contributions to the vacation fund. *Id.* at 35–39.[2] Moreover, the employer is obliged to keep certain records and permit the union's representatives to conduct periodic audits. *Id.* at 40–42. Frascone acknowledges that he signed the collective bargaining agreement in December 2017 on behalf of Alpha Omega, though he contends he was only provided the agreement's signature page. ECF No. 78-1 ¶ 1.

The collective bargaining agreement that Frascone signed provides that it shall apply at least through 2018. ECF No. 77-5 at 72. Plaintiffs do not have a signature page indicating defendants' consent to be bound from 2018 to the present, but the contract provides that it "shall be automatically extended and renewed" on a yearly basis on the same terms unless either party gives written notice. *Id.* at 74. No such notice appears to have been given. In addition, plaintiffs argue that defendants

---

[1] Plaintiffs have withdrawn their claims against Alpha Omega and Frascone for allegedly failing to remit union dues that were withheld from employee wages. ECF No. 86. They have also withdrawn their request for injunctive relief. ECF No. 77-1 at 19.

[2] All citations to the record are to the page number in the ECF header, not the internal pagination of the document.

2

demonstrated their ongoing consent by continuing to make some payment to the funds after 2018 and submitting to audits. ECF No. 77-1 at 6 n.4.

The collective bargaining agreement provides that "[t]he Employer hereby agrees to be bound by" the union's various "Agreements and Declarations of Trusts . . . as though he had actually signed the individual documents[.]" ECF No. 77-5 at 39–40. These agreements and declarations of trust include those establishing the union's welfare fund, pension fund, supplemental annuity fund, vacation fund, apprenticeship fund, and fringe benefit funds. *Id.* As relevant here, the various plans all provide that "[t]itle to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund" (or in one instance, "in the Trustees of the Fund"). *See* ECF No. 77-3 ¶¶ 10–12.

Plaintiffs move for summary judgment on both liability and damages, arguing that defendants failed to make required contributions to the union's benefit funds. They seek approximately $875,000 in delinquent contributions covering the period from October 2016 through December 2019, as well as interest and penalties, for a grand total of approximately $1.25 million. ECF No. 77-4 ¶¶ 2–4, 6–7, 12, 27–29. That figure is derived from an audit of defendants' records by a firm selected by plaintiffs that was conducted at the Magistrate's direction. *Id.* ¶¶ 2–4, 8; *see* ECF No. 27. Defendants oppose that motion and seek partial summary judgment on the ground that Frascone is not personally liable for any missed contributions.

**STANDARD OF REVIEW**

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether there is a genuine dispute as to a material fact, [I] resolve all ambiguities and draw all inferences in favor of the non-moving party." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (internal citation omitted).

**DISCUSSION**

"ERISA provides that an employer is obligated to make contributions to multiemployer benefit plans under a collective bargaining agreement in accordance with the agreement's terms." *Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 96 (E.D.N.Y. 2015) (citing 29 U.S.C. § 1145). If an employer is non-compliant, ERISA provides for statutory damages, including in the amount of the unpaid contributions, interest, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 1132. Moreover, under the Labor Management Relations Act, "an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a [collective bargaining agreement]." *Trs. of Drywall Tapers & Pointers Local Union No. 1974 Benefit Funds v. Plus K Constr. Inc.*, 2021 WL 1199566, at *4 (S.D.N.Y. Mar. 30, 2021) (internal quotation omitted). I first address whether the uncontested evidence demonstrates that

defendants are liable for any shortfall and then turn to whether plaintiffs have shown that the undisputed evidence supports their calculation of damages.

## I. Liability

### A. Alpha Omega

Plaintiffs have shown that there is no genuine dispute that Alpha Omega is liable for failing to make at least some required payments to the various benefit plans. Indeed, Alpha Omega does not seriously contest this point. It concedes that Frascone signed the collective bargaining agreement on behalf of Alpha Omega, which in turn obliges Alpha Omega to make various payments based on the number of hours worked by covered employees. *See* ECF No. 78-1 ¶¶ 1–2. Defendants' opposition to plaintiffs' summary judgment motion argues only that there are disputed issues as to the proper calculation of damages and that Frascone is not personally liable. *See id.* ¶¶ 2–5.

Plaintiffs have likewise demonstrated that Alpha Omega is liable for unpaid contributions for the period spanning 2015 to 2019. Defendants admit that Frascone signed the collective bargaining agreement on Alpha Omega's behalf, which covered the period from 2015 to 2018. ECF No. 78-1 ¶ 1; ECF No. 77-5 at 72. Frascone further admits that he signed a rider in December 2017 that reaffirmed Alpha Omega's obligations under the collective bargaining agreement. ECF No. 78-1 ¶ 2; ECF No. 78-2 ¶ 4. Plaintiffs have also introduced uncontested evidence that

Alpha Omega continued to employ union members in 2019. *See, e.g.*, ECF No. 77-9 at 6. In any event, the collective bargaining agreement that Alpha Omega signed provides that it renews on a yearly basis until either party provides a notice of termination. ECF No. 77-5 at 74. Alpha Omega has not offered any evidence suggesting that it provided such notice, which suffices to demonstrate its liability for the post-2018 period. *See, e.g.*, *Alston v. 1749-1753 First Ave. Garage Corp.*, 2015 WL 12564203, at *6 (E.D.N.Y. June 30, 2015) (collecting cases).

Finally, Alpha Omega argues in Frascone's declaration that Alpha Omega is not bound by the collective bargaining agreement because he only saw the signature pages and did not review the underlying agreements. This argument is arguably forfeited because it is not raised in the company's brief and is not supported by any legal authority, but I address it briefly for completeness. *Osuji v. Fed. Nat'l Mortg. Assoc.*, 571 B.R. 518, 523 n.8 (E.D.N.Y. 2017) (Bianco, *J.*). Contrary to defendant's argument, it is well-established that a party is bound to a contract it signed even if that party only read—or was only provided with—the signature page. *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11 (1988); *Dasz, Inc. v. Meritocracy Ventures, Ltd.*, 108 A.D.3d 1084, 1084–85 (4th Dep't 2013); *see also Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (collecting cases).[3] In

---

[3] It is also no defense, as defendants assert elsewhere, that they may have made benefit payments directly to individual employees, since they had a contractual obligation to pay the benefit funds. *Trs. of Ne. Carpenters Health*

6

sum, Alpha Omega is liable to the funds for any unpaid contributions it owed under the collective bargaining agreement, as well as any associated statutory damages. It is also liable for deductions from employee wages that were supposed to be turned over to the union's vacation fund under the collective bargaining agreement, which also qualify as plan assets under ERISA. *See* 29 C.F.R. § 2510.3-102 ("the assets of the plan include amounts (other than union dues) . . . that a participant has withheld from his wages by an employer, for contribution . . . to the plan"); ECF No. 77-5 at 39.

### B. *Frascone*

Plaintiffs also seek to hold Frascone jointly and severally liable as a fiduciary for unpaid contributions to the union's pension funds, vacation fund, and annuity fund. "A fiduciary, under ERISA, is someone who exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets." *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr.*, 779 F.3d 182, 188 (2d Cir. 2015) (internal quotation omitted) (alterations in original). "To establish the personal liability of a fiduciary, a plaintiff must show 'both that (1) the unpaid contributions were plan assets and (2) [the defendant]

---

*v. Energy Smart Insulation, Inc.*, 2018 WL 816829, at *2 (E.D.N.Y. Jan. 23, 2018) (collecting cases), *report & recommendation adopted* 2018 WL 813498 (E.D.N.Y. Feb. 9, 2018).

7

exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'" *Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc.*, 2019 WL 343243, at *3 (E.D.N.Y. Jan. 28, 2019) (quoting *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009)).

Taking these issues in turn, I conclude first that the employer's unpaid contributions were assets of the various benefit plans. The Second Circuit has held that, ordinarily, "employer contributions become assets only after being paid." *Halpin*, 566 F.3d at 290. In other words, there is usually no fiduciary obligation over funds that have not yet been paid to the benefit plan, because they are simply a debtor's obligation to its creditor. *Id.* Even so, the Second Circuit explained that plan trustees and employers are "free to contractually provide for some other result," such that the unpaid contributions are plan assets. *Id.*; *see Moulton Masonry & Constr.*, 779 F.3d at 189 (concluding that an individual defendant could be liable under ERISA where "contributions were designated as plan assets under the trust documents").

The contracts here make clear that unpaid contributions are assets of the plans. As noted above, they state that "[t]itle to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund" (or in one instance, "in the Trustees of the Fund"). *See* ECF No. 77-3 ¶¶ 10–12. Frascone argues that the use of "and/or" is "hopelessly ambiguous" because it does not clarify

8

whether the money must be "paid into" *and* owed to the fund before it is vested, or if it is sufficient for the money to be paid *or* owed. The Second Circuit, however, has already construed virtually identical language and found that such contributions were "designated as plan assets under the trust documents." *Moulton Masonry & Constr.*, 779 F.3d at 189 (citing J.A. 190, 257, 313, which state that "[t]itle to all monies paid into and/or due and owing to the [Funds] shall be vested in and remain exclusively in the Trustees of the Fund"). District courts have held similarly. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC*, 2019 WL 2271942, at *7 n.8 (E.D.N.Y. Mar. 6, 2019), *report & recommendation adopted* 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019); *Sullivan v. M.A.C. Design Corp.*, 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015). These holdings are based on the commonsense understanding that "and/or" means "the one or the other or both." *Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981); *see also* Cambridge English Dictionary ("and/or" is "used to refer to both things or either one of the two mentioned"). Thus, the plain meaning of the plans is that money is vested in the funds when it is owed, whether or not payment has been made.

  Turning to the second prong of the *Halpin* test, the next question is whether Frascone exercised a sufficient level of control over the unpaid contributions to make him a fiduciary. 566 F.3d at 289. "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.

9

1997). ERISA's definition of a fiduciary is "functional," *id.*, and, as relevant here, focuses on whether a defendant "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). A defendant is not a fiduciary merely because he served as an officer of a company employing union members. *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (citing *LoPresti*, 126 F.3d at 40). Nor is it sufficient that a defendant was authorized to sign company checks and was generally aware that benefit plans were supposed to be funded through employee deductions. *Id.* The Second Circuit has held that fiduciary status is established, however, by a showing that the defendant was "responsible for determining which of the company's creditors would be paid or in what order," which shows that he had the power to divert plan funds to company uses. *Id.* (internal quotation and alteration omitted); *see also Moulton Masonry*, 779 F.3d at 188–89.

The undisputed evidence confirms that Frascone was a fiduciary under this functional definition. Most significantly, Frascone stated in his declaration that he has been "at all relevant times a 100% shareholder and President for Alpha Omega

Building Corp." ECF No. 74 ¶ 1.[4] Indeed, Frascone has not pointed to anyone else who had a role in setting Alpha Omega's payment priorities. Courts have held that sole owners who are also corporate presidents are fiduciaries under the functional test because "it is apparent that only he could decide when to make contributions to the benefit funds, and how much to contribute." *Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech, Inc.*, 2015 WL 6449420, at *6 (E.D.N.Y. Oct. 23, 2015); *see also Reilly v. Reem Contracting Corp.*, 380 F. App'x 16, 19 (2d Cir. 2010) (affirming that individual defendants were ERISA fiduciaries given "uncontested evidence that they had exclusive control over" their companies); *Trs. of Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech., Inc.*, 2014 WL 2644774, at *3–4 (E.D.N.Y. June 13, 2014) (concluding that majority owner who served as company president was personally liable); *Trs. of Plumbers Local Union No. 1 Welfare Fund v. Bass Plumbing & Heating Corp.*, 2014 WL 6886107, at *5 (E.D.N.Y. Dec. 8, 2014) (same); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, 2014 WL 2600095, at *5–6 (E.D.N.Y. June 11, 2014) (Bianco, *J.*) (sole proprietor with responsibility for making payment decisions was ERISA fiduciary).

As the sole owner and president of Alpha Omega, Frascone possessed the

---

[4] Plaintiffs have also introduced uncontested evidence that Frascone signed checks remitting some payment to the funds, signed the collective bargaining agreement on Alpha Omega's behalf, and was involved in Alpha Omega's day-to-day activities.

11

ultimate authority over the funds the company retained, at least some of which were owed to the bricklayers' benefit funds. Although the Second Circuit has held that a co-owner of a firm is not necessarily an ERISA fiduciary—where his partner played the sole role in setting the company's financial priorities—it is clear that a sole owner who serves as the corporate president has the authority to make decisions about the firm's finances and payment priorities. *LoPresti*, 126 F.3d at 40–41. Frascone is therefore individually liable as an ERISA fiduciary because he possessed discretionary authority over assets owed to the benefit plans.

## II. Damages

Plaintiffs seek summary judgment on damages based on an audit—conducted at the Magistrate's direction—by a firm selected by plaintiffs. According to plaintiffs, the audit was based on incomplete information because defendants failed to provide full payroll records. ECF No. 77-4 ¶¶ 4–7. Thus, the audit was conducted solely on the basis of Alpha Omega's tax records, forcing the auditors to estimate damages. In particular, the auditors began with the total amount paid to the union's employees, then divided that by the wage rate to obtain union members' estimated hours. The auditors then subtracted the estimated hours for which Alpha Omega had already contributed to the benefit plans. Finally, the auditors multiplied the missing number of hours by the hourly rate the employer owed under the collective bargaining agreement and plan documents. *See* ECF No. 77-9 at 2.

Plaintiffs' rationale for relying solely on tax documents to estimate damages, as opposed to more fine-grained payroll information, is unpersuasive. The parties repeatedly litigated before the Magistrate the issue of the availability of these payroll records, which culminated in the Magistrate so-ordering subpoenas directed at the payroll companies. ECF No. 34 & Order dated Mar. 16, 2020. The parties sought several extensions of time to complete discovery, in part because of the Covid-19 pandemic and the difficulty of serving the subpoenas on the payroll companies—although the parties had at least four months of discovery before the public health crisis. *See, e.g.*, ECF Nos. 33–35. The Magistrate accommodated those requests and suggested that "plaintiffs should consider effecting service of the nonparty subpoenas through the NYS Secretary of State." Order dated May 20, 2020. She extended discovery for an additional seven months and during that time admonished "counsel on both sides for failing to diligently pursue discovery in this case." Order dated Aug. 21, 2020. Plaintiffs had abundant opportunities to obtain payroll records, and I therefore cast a jaundiced eye at plaintiffs' argument that they had no choice but to rely on partial data in conducting their audit.

Defendants have also adequately disputed other aspects of the auditors' report. For example, they introduce deposition testimony from the lead auditor, who testified that the auditors *did* have access to some payroll information and yet chose not to use it, even as a data point to check the adequacy of the estimates derived from

13

tax records. *See* ECF No. 78-6 at 6–7, 14–15. That choice had potentially meaningful consequences. For instance, as the lead auditor confirmed at his deposition, his approach cannot discern how much overtime the employees were paid. *Id.* at 12. The auditors' report therefore arguably overstates the number of hours for which defendants owed contributions to the plans, because their calculations did not account for a variable wage rate. *See id.* Moreover, defendants have disputed that specific employees included in the auditors' report were covered by the collective bargaining agreement, and thus whether defendants owed contributions for them. ECF No. 78-2 ¶ 3. Plaintiffs respond that their records classify those employees as covered by the collective bargaining agreement, but that is the sort of factual dispute that is not suited for summary judgment.

Plaintiffs argue that I should follow a burden-shifting rule that some district courts have employed in cases involving unpaid contributions. Under that rule, the employer is required to rebut plaintiffs' estimate of damages with its own evidence when the employer has failed to maintain its records. *See, e.g.*, *Trs. of Local 813 Ins. Fund v. Rogan Bros. Sanitation, Inc.*, 2018 WL 1587058, at *10–11 (S.D.N.Y. Mar. 28, 2018). Many courts, however, have declined to apply this rule at summary judgment. *See Trs. of Local 7 Tile Indus. Welfare Fund v. Castle Stone & Tile, Inc.*, 2020 WL 4481963, at *7 n.6 (E.D.N.Y. Aug. 4, 2020) (concluding that it would be "premature" to apply the burden-shifting rule at summary judgment); *N.Y. Dist.*

*Council of Carpenters Pension Fund v. KW Constr., Inc.*, 2010 WL 3958799, at *5 (S.D.N.Y. Sept. 8, 2010) (observing that "even courts that follow" this rule have often "rejected the burden-shifting analysis when applied on summary judgment against the employer").

The Second Circuit has not yet adopted the burden-shifting rule. And it has held that, even assuming the rule's validity, it does not apply when the defendant disputes that all of the employees included in the auditors' calculation "had been covered by the [collective bargaining agreements]." *Reilly*, 380 F. App'x at 20. The Second Circuit held that it is not enough "to rely exclusively on the auditor's report, which in turn rested on a bald and unsupported assumption to that effect." *Id.* That is precisely what defendants have claimed, through Frascone's declaration, that plaintiffs did here.

A reasonable factfinder could therefore find that plaintiffs' estimate of damages is not conclusive. As Judge Cogan explained in a case involving the same plaintiffs, defendants have done "enough to convince the Court that there is still quite a bit of work to be done before final, accurate damages figures can be distilled from the balance sheets." *Bricklayers Ins. & Welfare Fund v. Mastercraft Masonry I, Inc.*, 2020 WL 70843, at *5 (E.D.N.Y. Jan. 7, 2020); *see also Trs. of Sheet Metal Workers Int'l Ass'n Local No. 38 Vacation Fund v. Katonah Roofing, Inc.*, 2011 WL 9010113, at *6 (S.D.N.Y. Sept. 4, 2011) (declining to grant plaintiffs' motion for

15

summary judgment because defendants disputed "the results of the audit and the amount of damages generally").[5]

## CONCLUSION

In sum, plaintiffs have established that Alpha Omega and Frascone are liable for unpaid contributions to the benefit plans, but plaintiffs are not entitled to summary judgment on damages. Plaintiffs' motion for summary judgment is therefore granted in part and denied in part, while Frascone's motion for summary judgment is denied.

                                                              **SO ORDERED.**

Brooklyn, New York                                       *Edward R. Korman*
August 30, 2021                                            Edward R. Korman
                                                                                        United States District Judge

---

[5]     Plaintiffs' estimates will also need to be revised in light of their withdrawal of their claim for unremitted union dues.