UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BRICKLAYERS INSURANCE AND
WELFARE FUND, *et al.*,

                              **Plaintiffs,**                    REPORT AND
                                                          RECOMMENDATION

                      -against-                                  19-CV-2600 (ERK) (RLM)

ALPHA OMEGA BUILDING CORP., *et al.*,

                              **Defendants.**
-----------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

      In this action, plaintiffs—various union benefit funds, a trustee of those funds, and a

local bricklayers union[1]—allege that defendants Alpha Omega Building Corp. ("Alpha

Omega") and Anthony Frascone ("Frascone") failed to remit contributions required pursuant

to a collective bargaining agreement, in violation of the Employee Retirement Income Security

Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").  See generally Complaint (May 2, 2019)

("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

      Currently pending before this Court, on a referral from the Honorable Edward R.

Korman for a calculation of damages, is plaintiffs' motion for default judgment.[2]  See generally

---

[1] The plaintiffs in this case include: Bricklayers Insurance and Welfare Fund ("Welfare Fund"); Bricklayers Pension Fund ("Pension Fund"); Bricklayers Supplemental Annuity Fund ("Annuity Fund"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"); International Masonry Institute ("IMI"); Jeremiah Sullivan, Jr. ("Sullivan"); Bricklayers Local 1 of the International Union of Bricklayers and Allied Craft Workers; and Bricklayers Labor Management Committee ("LMU").

[2] As discussed *infra*, the District Court previously ruled in favor of plaintiffs on the issue of defendants' liability. See generally Memorandum and Order . . . Granting in Part . . . [Plaintiffs'] Motion for Summary Judgment (Aug. 30, 2021) ("8/30/21 M&O"), DE #93.  This Report and Recommendation therefore addresses damages only.

Motion to Strike [ ] Answer to Complaint . . . *and for Entry of Judgment Against Defendants* (May 23, 2022) ("Pl. 5/23/22 Mot."), DE #115; Order Referring Motion [as to Alpha Omega] (June 14, 2022) ("6/14/22 Referral Order"); Order [Referring Motion as to Frascone] (Aug. 25, 2022) ("8/25/22 Referral Order"); Letter . . . *dated Oct. 4, 2022* [ ] (Oct. 4, 2022), DE #123.  For the reasons that follow, this Court respectfully recommends that plaintiffs be awarded damages as set forth below.

## BACKGROUND

### I.    Factual Background

Bricklayers Local 1 ("Local 1") of the International Union of Bricklayers and Allied Craft Workers (the "IU") is the local union representing New York bricklayers and, as such, is a "labor organization" within the meaning of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  See Compl. ¶ 8.  Each of the Local 1 fringe benefit funds—i.e., the Pension Fund, the Annuity Fund, the Welfare Fund (which includes the Vacation Fund), and the JATC (collectively, the "Local 1 Funds"), along with the IPF and the IMI (collectively, with the Local 1 Funds, the "Funds" or the "ERISA Funds")—constitutes an "employee benefit plan," a "multiemployer plan," and a "fiduciary" within the meaning of ERISA.  See id. ¶¶ 6-7; 29 U.S.C. §§ 1002(3), 1002(21)(A), 1002(37).  Plaintiff Sullivan is President of Local 1, the Chairman of Trustees, and Trust Administrator of the Local 1 Funds, and is thus a "fiduciary" of the Local 1 Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  See Compl. ¶ 7.  Sullivan is also a trustee of the IMI and a participant in and beneficiary of the Funds.  See id.  As President of Local 1, Sullivan is "authorized to sue to collect wage assignments that have not been remitted by employers to

2

Local 1 and" the IU.  Id.  The trustees of the Funds have authorized Sullivan to commence this lawsuit.  See id.[3]

Corporate defendant Alpha Omega is a building contractor and employer of bricklayers that maintains offices and conducts business in New York.  See id. ¶ 10.  The individual defendant, Frascone, is the President and sole shareholder of Alpha Omega.  See id. ¶ 11.  In December 2017, Alpha Omega became a signatory to Local 1's collective bargaining agreement covering bricklayers (the "CBA").[4]  See id. ¶ 12; see also Local 1 Collective Bargaining Agreement (docketed on Apr. 16, 2021) ("CBA"), DE #77-5 at 2.[5]  Under the terms of the CBA, Alpha Omega is required to make certain contributions, at specified rates per hour, to the Funds for each Local 1 bricklayer that it employs.  See Compl. ¶ 12.  The CBA further requires Alpha Omega to "transmit after-tax deductions from employee wages to the Vacation Fund . . . at a specified rate per hour."  Id. ¶ 13.  Alpha Omega is further obligated to maintain certain payroll records and to permit Local 1 representatives to conduct periodic audits to ascertain the amount of fringe benefits owed by Alpha Omega and to verify the accuracy of its employer contribution reports.  See id. ¶ 45.

---

[3] Since Sullivan's standing to collect a judgment on behalf of the various Funds has at no time been contested, the Court need not address "whether the Funds would have had standing to sue under ERISA if Sullivan had not sued as their fiduciary."  Bricklayers Ins. Welfare Fund v. Manley Constr. Corp., No. 13-CV-224 (RRM)(JO), 2014 WL 4699710, at *3 (E.D.N.Y. Sept. 22, 2014).

[4] All citations to the CBA are to the page numbers in the ECF header, rather than to the document's internal pagination.

[5] In moving for summary judgment, plaintiffs proffered an exhibit comprised of two CBAs—one effective on and after July 1, 2015 until June 30, 2018, see CBA, DE #77-5 at 28, and the other effective on and after July 1, 2018 until June 30, 2021, see id. at 5.  The CBA signed by Frascone on behalf of Alpha Omega appears to be the earlier agreement.  See id. at 2.  However, as Judge Korman held in granting plaintiffs summary judgment on liability, the executed CBA expressly provides that it "shall be automatically extended and renewed" on an annual basis absent written notice by either contracting party.  See 8/30/21 M&O at 2, DE #93 (quoting CBA art. X § 1, DE #77-5 at 74).  As no such notice was provided, and defendants continued to make some payments to the Funds after 2018, the CBA was automatically extended and renewed.  See id. at 2-3.

Plaintiffs allege that Alpha Omega failed to make the necessary contributions to the Funds for those hours worked by Local 1 bricklayers on Alpha Omega's building projects, including a prevailing wage job called the Beach Channel Senior Residence Project (the "Beach Channel Project"). See id. ¶¶ 16-20; see also Declaration of Viorel Kuzma, Senior Staff Member of Schultheis & Panettieri, LLP, Certified Public Accountants (docketed on May 23, 2022) ("Kuzma Decl.") ¶ 5, DE #115-1. Plaintiffs further allege that Frascone, in his capacity as a fiduciary, failed to make certain contributions to the Welfare Fund, the IPF, the Pension Fund, and the Annuity Fund; he is also alleged to have misappropriated certain deductions for the Vacation Fund.[6] See Compl. ¶¶ 3-25, 28-30, 33-35, 38-40.

## II.    Procedural Background

On May 2, 2019, plaintiffs filed the instant Complaint against defendants, seeking to recover unpaid contributions and, against Alpha Omega, liquidated damages, prejudgment interest, and attorneys' fees and costs. See generally Compl. After first failing to appear or otherwise respond, defendants filed their Answer to the Complaint on November 4, 2019.[7] See generally Answer (Nov. 4, 2019), DE #19.

The parties subsequently engaged in discovery. On January 9, 2020, at the direction of this Court, the parties met to determine the scope of an audit of Alpha Omega's books, and to

---

[6] Plaintiffs have since abandoned their claims for unremitted dues checkoffs against Alpha Omega under Section 301 of the LMRA, 29 U.S.C. § 185 et seq., for state law conversion against Frascone, as well as for injunctive relief. See Stipulation of Dismissal (June 8, 2021) at 1, DE #86; [Plaintiffs'] Memorandum in Support of Motion for Summary Judgment (Apr. 16, 2021) ("Pl. MSJ Mem.") at 14, DE #77-1.

[7] Despite having been properly served, defendants initially failed to answer or otherwise appear. On August 29, 2019, a default was entered against defendants, and plaintiffs subsequently moved for default judgment. See [First] Entry of Default [as to Frascone] (Aug. 29, 2019), DE #10; [First] Entry of Default [as to Alpha Omega] (Aug. 29, 2019), DE #11; [Original] Motion for Default Judgment (Oct. 2, 2019), DE #14. Defendants' default was later vacated on consent of the parties, after which time defendants filed their responsive pleading. See Order granting [ ] Motion to Vacate (Nov. 13, 2019).

collect the records necessary to determine the amount of damages owed by defendants. See Minute Entry (Dec. 12, 2019), DE #27; Status Report (Jan. 10, 2020) ("1/10/20 Status Report") at 1-2, DE #28. Defendants nevertheless failed to produce complete payroll and tax records. See 1/10/20 Status Report at 2, DE #28. The parties litigated the availability of these records, and the Court so-ordered several subpoenas *duces tecum* addressed to Alpha Omega's payroll companies to produce the records in their possession.[8] See Letter *re: subpoenas* (Mar. 13, 2020), DE #34; Order (Mar. 16, 2020). Plaintiffs faced numerous difficulties serving these subpoenas and obtaining the necessary documentation to complete their audit. See, e.g., Motion for Extension of Time to Complete Discovery (May 19, 2020) at 1, DE #36. Ultimately, plaintiffs' auditor—Schultheis & Panettieri, LLP ("S&P"), an independent accounting firm—conducted an audit and produced a report (the "Audit Report") covering the period of October 1, 2016 through December 31, 2019 (the "Audit Period"), based solely on Alpha Omega's tax records, with the auditor having to estimate plaintiffs' damages. See Declaration of Viorel Kuzma in Support of Motion for Summary Judgment (docketed on Apr. 16, 2021) ("1/13/21 Kuzma Decl.") ¶ 5, DE #77-4.

Approximately a year later, in April 2021, the parties cross-moved for summary judgment on the issues of both liability and damages. See generally Defendants' Motion for Summary Judgment (Apr. 16, 2021), DE #64; Plaintiffs' Motion for Summary Judgment (Apr. 16, 2021), DE #77. On August 30, 2021, Judge Korman granted summary judgment in favor

---

[8] These payroll companies are ADP, Paychex, Infiniti, and Vensure. See Kuzma Decl. ¶ 6 n.1, DE #115-1. According to plaintiffs, "ADP produced wage and tax registers for 2017, but no records breaking out individual employees' hours"; "Paychex indicated it was unable to locate any responsive documents"; "Infiniti produced an Employee Master Report and Payroll Register for January 20-October 23, 2019, with no indication of any overtime"; and "Vensure produced payroll records of hours worked by Alpha Omega office workers and other documents, but no records pertaining to bricklayers' or plasterers' hours." Id.

of plaintiffs on liability but denied such judgment with respect to damages. See 8/30/21 M&O at 16, DE #93. Specifically, Judge Korman concluded that Alpha Omega is liable for unpaid contributions to the Funds, unremitted deductions from employee wages that were supposed to be turned over to the Vacation Fund, and associated statutory damages. See id. at 7. Judge Korman further concluded that Frascone is individually liable for a portion of the total delinquent contributions, specifically those contributions to the IPF, the Pension Fund, the Vacation Fund, and the Annuity Fund.[9] See id. at 7, 12. Plaintiffs' request for summary judgment on the issue of damages was denied because (1) the Audit Report "arguably overstates the number of hours for which defendants owed contributions to the plans" due to the possibility of overtime work; and (2) defendants disputed whether the CBA covers eight of the 71 employees included in the Audit Report. Id. at 12-16.

After the parties tried unsuccessfully to settle the matter, see Minute Entry (Oct. 14, 2021), DE #95; Amended Order (Nov. 4, 2021) ("11/4/21 Order"), the Court directed them to file their joint pretrial order ("JPTO") by November 24, 2021, see 11/4/21 Order. The Court identified numerous issues with the resulting JPTO, which the parties were instructed to cure by December 6, 2021. See Order (Nov. 29, 2021). On December 8, 2021, the Court conducted a hearing to address the JPTO deficiencies and other discovery-related issues. See

---

[9] Typically, unpaid employer contributions are not considered "plan assets" unless the collective bargaining agreement or other plan documents provide otherwise. See In re Halpin, 566 F.3d 286, 290 (2d Cir. 2009). Here, in moving for summary judgment, plaintiffs identified four ERISA Funds for which it was seeking to hold Frascone jointly and severally liable: to wit, the IPF, the Pension Fund, the Vacation Fund, and the Annuity Fund. See Pl. MSJ Mem. at 7, DE #77-1. Judge Korman found that the parties' contracts specifically provide that title to any monies owing to those particular Funds vest with the trustees thereof and that therefore those unpaid ERISA contributions are plan assets; thus, Frascone, in his capacity as an ERISA fiduciary, is jointly and severally liable for the unpaid contributions owed to those Funds. See 8/30/21 M&O at 7-12, DE #93 (citing, inter alia, Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC, 17-CV-6067 (SJ) (ST), 2019 WL 2271942, at *7 & n.8 (E.D.N.Y. Mar. 6, 2019), adopted, 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019)).

Minute Entry (Dec. 8, 2021) ("12/8/21 Minute Entry"), DE #102.  The Court reopened discovery on a limited basis and ordered plaintiffs to conduct, and serve on defendants, a supplemental audit report for the Audit Period and to take into account overtime hours as well as the subpoenaed records provided by the third-party payroll companies (the "Supplemental Audit Report"); defendants were given a deadline by which to request additional discovery and/or depose the auditor regarding the Supplemental Audit Report.  See id.

On December 30, 2021, plaintiffs timely served defendants with the Supplemental Audit Report, which included an estimate of overtime hours and provided for a downward adjustment of the total hours for which plaintiffs seek unpaid contributions to the Funds.  See Kuzma Decl. ¶ 7, DE #115-1; see generally Supplement to Audit (docketed on May 23, 2022) ("Supp. Audit Report"), DE #115-3.  Defendants neither requested additional discovery, nor deposed plaintiffs' auditor with respect to the Supplemental Audit Report, which, as a result, remains uncontested.

On March 7, 2022, former defense counsel, Christopher Smith, filed a motion to withdraw as attorney, which the Court granted on March 23, 2022.  See generally Motion to Withdraw as Attorney (Mar. 7, 2022), DE #111; Order granting [ ] Motion to Withdraw as Attorney (Mar. 23, 2022) ("3/23/22 Order").  Accordingly, the Court set a deadline of April 20, 2022 for defendants to obtain new counsel, and reminded defendants that if they failed to secure representation, a default judgment would be entered against Alpha Omega and the case would go forward with Frascone proceeding *pro se*.  See 3/23/22 Order.  Neither defendant retained new counsel.  Because Alpha Omega, an entity, was precluded from proceeding *pro*

*se*, Judge Korman ordered that defendants' Answer be stricken as to Alpha Omega.  See Order (Apr. 29, 2022).

On May 23, 2022, plaintiffs moved to strike the entirety of defendants' Answer, requesting that the Court enter judgment against Alpha Omega in the amount of $1,162,647.64, and against Frascone in the amount of $445,110.85.  See Pl. 5/23/22 Mot. at 1.  Judge Korman requested that the Clerk of the Court enter a notation of default against Alpha Omega, and referred plaintiffs' motion to this magistrate judge for a Report and Recommendation on damages as to Alpha Omega.  See 6/14/22 Referral Order.  Judge Korman also referred the matter to this Court for a final status conference to ascertain Frascone's intentions going forward.  See id.

On July 5, 2022, this Court held a final status conference, during which Frascone was directed to inform the Court by the end of the following day whether he intended to contest the issue of damages or take no further action.  See Minute Entry (July 5, 2022), DE #118. Frascone timely responded in writing that he has no intention of further defending the case against him.  See Email dated 7/6/2022 from defendant Anthony Frascone to Court (docketed on July 29, 2022), DE #120.

On August 25, 2022, in light of Frascone's decision, Judge Korman ordered that a default be entered against him.  See 8/25/22 Referral Order.  Judge Korman also referred plaintiffs' 5/23/22 motion for a default judgment with respect to Frascone to this magistrate judge for a calculation of damages.  See id.  Judge Korman's order was stayed, however, until September 12, 2022, in order to provide Frascone one final opportunity to inform the Court whether he wished to litigate the issue of damages.  See id.  Frascone failed to respond and, on

September 19, 2022, after the District Court's stay was lifted, the Clerk of the Court entered a

default against Frascone.  See [Second] Entry of Default [as to Frascone] (Sept. 19, 2022)

("9/19/22 Default Entry"), DE #122.

## DISCUSSION

I.    **Legal Standard**

In the case at bar, defendants' liability was established on summary judgment.  See

generally 8/30/21 M&O, DE #93.  Defendants have since defaulted with respect to damages,

which is the sole outstanding issue.  See 9/19/22 Default Entry; [Second] Entry of Default [as

to Alpha Omega] (June 30, 2022), DE #116.  A party's default is not, however, an admission

of damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158

(2d Cir. 1992).  Rather, the plaintiff bears the burden of proving its damages with evidentiary

submissions.  See id.  The moving party is entitled to all reasonable inferences from the

evidence it offers.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  A court may hold an inquest hearing

on damages but need not do so where the plaintiff has submitted documentary evidence in

support of its demand.  See Romanowicz, 577 F.3d at 83 n.6 (hearing deemed unnecessary

where the plaintiff did not request one and submitted documentary evidence of damages).

Here, plaintiffs have submitted the following in support of their demand for damages:

the declaration of plaintiffs' auditing company, the original auditors' report, the supplemental

auditors' report, and the auditors' ERISA Funds calculations.  See DE #115-1 to #115-4.  In

light of the foregoing evidence and the absence of any request for a hearing, the Court will

determine the amount of damages based solely on plaintiffs' documentary submissions.

## II.    Analysis of Plaintiffs' Demand for Damages

Plaintiffs seek to recover delinquent ERISA contributions, prejudgment interest, liquidated damages, and costs.[10]  See Compl., *ad damnum* clause; see also Kuzma Decl. ¶¶ 10-13, DE #115-1.  In particular, plaintiffs now request that judgment be entered against Alpha Omega for $1,162,647.64, which is comprised of the following amounts: $726,654.78 in unpaid ERISA contributions, $290,661.91 in prejudgment interest (as of May 16, 2022), and $145,330.95 in liquidated damages.  See Kuzma Decl. ¶¶ 10-11, DE #115-1; see also Pl. 5/23/22 Mot. at 1.  Plaintiffs further request that Frascone be held jointly and severally liable with Alpha Omega for $445,110.85 in unpaid ERISA contributions, see Kuzma Decl. ¶ 13, DE #115-1; see also Pl. 5/23/22 Mot. at 1, but do not seek prejudgment interest or liquidated damages (or costs or attorneys' fees) against Frascone, see Compl. ¶¶ 25, 30, 35, 40, *ad damnum* clause.

At the outset, the Court notes that the damages amounts requested by plaintiffs in the instant motion differ from, and are greater than, the amounts requested in the Complaint. Compare Compl., *ad damnum* clause, with Pl. 5/23/22 Mot. at 1.  Ordinarily, at the default judgment stage, courts are not permitted to award damages in excess of those requested in the complaint.  See Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  Nevertheless, "even in the context of default judgments, courts routinely permit ERISA plaintiffs to specify more precisely their damages after completion of an audit so long as the original complaint placed the defendants on notice that they would seek the amounts determined to be owed based upon the audit results,

---

[10] As discussed *infra*, plaintiffs have not moved for attorneys' fees and/or costs in connection with their motion for default judgment.

particularly where the defendants are provided an opportunity to dispute accuracy of the audit results." Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Structural Remediation Servs., Inc., 15-CV-6171CJS, 2017 WL 3392585, at *3 (W.D.N.Y. Aug. 8, 2017) (collecting cases); accord Upstate N.Y. Eng'rs Health Fund v. S. Buffalo Elec., Inc., 5:15-CV-903 (LEK/TWD), 2018 WL 4266040, at *2 (N.D.N.Y. Sept. 6, 2018) ("If defendants have adequate notice that actual damages may differ from those originally sought, ERISA plaintiffs can obtain more money than they initially request in their complaint."), vacated in part as moot, appeal dismissed in part sub nom. Upstate N.Y. Eng'rs Health Fund by Harrigan v. S. Buffalo Elec., Inc., 17–3664, 2018 WL 5905587 (2d Cir. May 10, 2018); see, e.g., Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 282 (E.D.N.Y. 2010).

Here, the Complaint demands unpaid contributions in the amount of $233,243 from Alpha Omega and $161,171.01 from Frascone, see Compl., *ad damnum* clause, whereas plaintiffs' motion for default judgment now seeks unpaid contributions of $726,654.78 from Alpha Omega and $445,110.85 from Frascone, see Kuzma Decl. ¶¶ 10-13, DE #115-1. Critically, the Complaint also requests an order from the Court "requiring Alpha Omega to permit and to cooperate with [p]laintiffs in the conduct of an audit of its books and records for the payroll periods of the weeks beginning with the end period of its most recent audit and continuing through the present time and *to pay any delinquencies shown to be due as a result of such audit*." Compl. ¶ 47 (emphasis added). The Complaint therefore generally puts defendants "on notice of the possibility of a larger damages figure." Upstate N.Y. Eng'rs Health Fund, 2018 WL 4266040, at *3. Moreover, both defendants—who, through counsel, opted earlier to defend the claims and participated in this litigation up until relatively recently—

11

were given ample opportunity to contest plaintiffs' motion for default judgment, as well as the Supplemental Audit Report. See 12/8/21 Minute Entry, DE #102. Accordingly, the Court concludes that plaintiffs may be properly awarded damages in excess of the amount demanded in the Complaint. See, e.g., Upstate N.Y. Eng'rs Health Fund, 2018 WL 4266040, at *3; Mason Tenders Dist. Council Welfare Fund v. I.M.I. Constr. Corp., No. 99 Civ.12105 LLS AJP, 2004 WL 1700615, at *2 (S.D.N.Y. July 30, 2004) (concluding that plaintiffs' request for damages in their motion for default judgment "should not be limited to the dollar figures in the complaint" because those amounts were originally accompanied by the phrase "at least …" and "the complaint also specifically refers to other (unquantified) amounts to be determined by subsequent audit").

      **A.**    **Unpaid Contributions**

         ***i.***    ***Calculation***

      Under ERISA, plaintiffs are entitled to recover delinquent contributions owed to the Funds. See 29 U.S.C. § 1132(g)(2)(A). Plaintiffs request that Alpha Omega be held liable for $726,654.78 in unpaid contributions to the Funds during the Audit Period. See Kuzma Decl. ¶¶ 10-11, DE #115-1. In support of their request, plaintiffs offer the Audit Report, the Supplemental Audit Report, and the auditors' ERISA Funds calculation. See generally [Original] Audit Report (docketed on May 23, 2022) ("Audit Report"), DE #115-2; Supp. Audit Report, DE #115-3; ERISA Funds Calculation (docketed on May 23, 2022), DE #115-4. Plaintiffs have also submitted the Declaration of Viorel Kuzma—a senior staff member at S&P who supervised Alpha Omega's audits—which explains the methodology and results of the Supplemental Audit Report (the "Kuzma Declaration"). See generally Kuzma Decl., DE

#115-1.  "If adequately explained and credited by the Court, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Savs. Plan v. Philip Gen. Constr., No. 05 CV 1665(NG)(RLM), 2007 WL 3124612, at *10 (E.D.N.Y. Oct. 23, 2007) (collecting cases); see Trs. of the Bldg. Trades Educ. Benefit Fund v. Tanachion Elec. Contracting, Inc., CV 17-5161 (DRH)(ARL), 2019 WL 4578959, at *2 (E.D.N.Y. July 1, 2019) ("An audit report provides sufficient proof of damages for unpaid fringe benefit contributions." (citation omitted)), adopted, 2019 WL 4575743 (E.D.N.Y. Sept. 20, 2019).  For the reasons that follow, the Court concludes that, for the most part, plaintiffs have adequately explained the Supplemental Audit Report and its underlying methodology,[11] and therefore the report and its damages calculations should be credited.

Under the CBA, Alpha Omega is required to maintain and produce copies of its books and records, including its payroll ledgers, W-2s, quarterly federal payroll tax returns, and related documents for inspection and audit.  See CBA art. III § 9(c), DE #77-5 at 11, 40-41. In violation of this requirement, Alpha Omega failed to maintain and/or provide to plaintiffs and their auditor, S&P, full and complete payroll records for those bricklayers covered by the CBA.  See Kuzma Decl. ¶ 5, DE #115-1.  As described supra note 8, Alpha Omega's payroll companies also produced incomplete records, as many of them did not have the requisite documentation in their possession.  Thus, due to the unavailability of complete records, plaintiffs' auditor conducted the two audits based in whole or in part on quarterly federal

---

[11] But see infra note 12.

payroll tax returns, W-2 tax forms, and incomplete, uncertified payroll records from the Beach Channel Project.  See id. ¶¶ 5-7, 9.

In the original Audit Report, the total amount paid to Alpha Omega's 71 bricklayers during the Audit Period was divided by the corresponding wage rate in order to calculate the bricklayers' estimated hours, from which was deducted the estimated hours for which contributions had already been made; the total principal owed to plaintiffs was then estimated by multiplying the estimated number of unreported hours by the corresponding contribution rates that were in effect at the time Alpha Omega's contributions were due.  See 8/30/21 M&O at 12, DE #93; 1/13/21 Kuzma Decl. ¶ 13, DE #77-4; see generally Local 1 Rate Schedules (docketed on Apr. 16, 2021) ("Rate Schedules"), DE #77-10.  The original Audit Report, which was based solely on tax documents, did not account for the possibility of overtime hours in calculating the number of unreported hours worked.  See generally Audit Report, DE #115-2; see also 8/30/21 M&O at 13-14, DE #93.  In the Supplemental Audit Report, the auditors addressed this issue by "examin[ing] the uncertified Beach Channel Project records[,] along with all records produced by subpoena to four payroll companies identified by defendants[,]" as these were the only additional records made available to plaintiffs.  Kuzma Decl. ¶ 6, DE #115-1.  The auditors determined that 6.15 percent of the hours reflected in the Beach Channel Project records were listed as overtime hours worked by Alpha Omega's bricklayers.  See id. To provide an estimate of the total number of overtime hours worked by the 71 Local 1 bricklayers included in the audit, the auditors then applied the 6.15 percent overtime figure across the entire Audit Period, yielding an estimate that Alpha Omega owed ERISA Fund contributions for 28,217.18 hours worked by the bricklayers, which sum was then reduced to

14

26,915.43 hours in order to account for Alpha Omega's prior qualifying payments.  See id. ¶¶ 7-8; Audit Report at 5, DE #115-2.  A final reduction in hours was applied to account for the estimated overtime hours, yielding 25,260.13 hours.  See Kuzma Decl. ¶ 9, DE #115-1; Supp. Audit Report at 3, DE #115-3.  The auditors then multiplied the revised total number of hours by the corresponding contribution rates, as set forth in the Local 1 rate schedules.  See generally ERISA Funds Calculation, DE #115-4; Rate Schedules, DE #77-10.

Based on the auditors' revised methodology and calculations, plaintiffs have identified $726,654.78 in total unpaid contributions to the Funds, which constitute ERISA plans.  See Kuzma Decl. ¶ 10, DE #115-1.  The breakdown is as follows:

| ERISA Funds | Unpaid Contribution Amounts |
|---|---|
| IPF | $37,890.15 |
| Pension Fund | $136,328.34 |
| Welfare Fund | $256,283.91 |
| Annuity Fund | $144,060.12 |
| IMI | $22,734.07 |
| JATC | $2,525.95 |
| Vacation Fund | $110,735.88 |
| IPF PPA Special Assessment | $16,096.36 |
| **Total** | **$726,654.78** |

See id.[12]

---

[12] Plaintiffs' various submissions contain no explanation regarding the so-called "IPF PPA Special Assessment." Though under no obligation to do so, the Court searched the exhibits and caselaw to ascertain the meaning and purpose of that assessment.  A similar omission was noted in Arch Insurance Company v. DCM Group, LLC, wherein the court observed:

> I infer that the abbreviations [IPF PPA Special Assessment] stand for, respectively, the International Pension Fund (one of the plaintiff Funds in this action) and the Pension Protection Act of 2006 ["PPA"], a federal statute that, among other things, required benefit funds in certain circumstances to take steps to improve their financial stability including the possibility of securing additional contributions from employers. See Pension Protection Act of 2006, Pub.L. 109–208 § 202, 29 U.S.C. §1085(c)[.]

Arch Ins., No. 11-CV-0930 (RRM)(JO), 2012 WL 3887098, at *4 (E.D.N.Y. Aug. 2, 2012), adopted, 2012 WL 3887654 (E.D.N.Y. Sept. 7, 2012).

After scouring the CBA in the case at bar, this Court located a subsection addressing contributions required to be made to the IPF, including, effective July 1, 2015, "a contribution to the IPF, in accordance with the PPA

As an initial matter, the Court notes that plaintiffs' revised calculation method and updated damages request remain uncontested, on account of defendants' failure to challenge the Supplemental Audit Report, and their subsequent default. "Where an employer fails to produce evidence to dispute the inferences drawn by plaintiffs pursuant to an audit, 'the court may award damages to [the plaintiffs] even where the damages are an approximate amount.'" Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC, 19-CV-126 (ENV), 2020 WL 9814088, at *8 (E.D.N.Y. Feb. 12, 2020) (collecting cases and quoting Fuchs v. Tara Gen. Contracting, Inc., No. CV 06-1282(ETB), 2009 WL 2922840, at *7 (E.D.N.Y. Sept. 8, 2009)). Moreover, the Court is satisfied that plaintiffs' auditor accurately calculated the unpaid contributions to the Funds for each bricklayer employee.[13] Nevertheless, the Court briefly addresses the two issues previously raised by defendants with respect to the original Audit Report.

First, defendants argued (on summary judgment) that the original Audit Report failed to account for overtime hours worked by the bricklayers, and therefore, potentially overstated the

---

mandated Funding Improvement Plan ('FIP') adopted by the IPF Board of Trustees in November 2010," in amounts that would vary over time, for each hour of work by a covered employee, "which shall be used solely to increase the IPF's funding in accordance with the mandates of the PPA." CBA art. III § 5(B)(2)-(4), DE #77-5 at 9-10, 37-38. Plaintiffs are admonished for failing to properly explain the basis for their inclusion of those amounts in their damages calculations. Nevertheless, having identified a provision in the CBA that obligated Alpha Omega to make contributions to the IPF in accordance with the PPA, this Court recommends that the judgment against Alpha Omega include unpaid contributions to the IPF PPA Special Assessment. But cf. infra p. 18-19.

[13] While the Court has not scrutinized every line entry of plaintiffs' detailed and voluminous ERISA Funds calculations, the Court has verified a number of entries and is satisfied that S&P properly determined the amount of contributions owed for Alpha Omega's bricklayer employees for each of the Funds. For example, with respect to bricklayer Milton Alleyne, the auditor calculated that defendants owe plaintiffs $563.10 in Vacation Fund contributions for December 2018. See ERISA Funds Calculation at 3, DE #115-4. The contribution rate of the Vacation Fund in December 2018 was $5, see Rate Schedule at 2, DE #77-10; by multiplying the $5 contribution rate by the number of hours for which Alpha Omega did not remit contributions as to Mr. Alleyne, the Court was able to confirm that defendants owe $563.10 in Vacation Fund contributions for this specific bricklayer for the given month and year.

hours worked and corresponding unpaid contributions. See 8/30/21 M&O at 13-14, DE #93. As noted above, plaintiffs have now addressed this challenge by using the records made available to them in order to estimate the number of overtime hours worked by Alpha Omega's bricklayers, and have made a downward adjustment in the total principal requested based on this accounting. See Kuzma Decl. ¶¶ 9-10, DE #115-1 (decreasing the amount of unpaid ERISA contributions from $774,272.56 to $726,654.78). As noted above, defendants have failed to contest this method for the approximation and accounting of overtime hours. Moreover, the CBA provides that, in the event that Alpha Omega "fails to produce its books and records necessary for a proper audit," plaintiffs are permitted, "in their sole discretion," to estimate the number of hours subject to contributions. See CBA art. III § 9(c), DE #77-5 at 11, 41-42. Given these circumstances, the Court adopts as reasonable plaintiffs' method for calculating unpaid ERISA contributions, as applied in the Supplemental Audit Report. See, e.g., Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611 (FB)(CLP), 2007 WL 4125453, at *4-5 (E.D.N.Y. Nov. 16, 2007) (adopting plaintiffs' "reasonable estimations" of unpaid contributions where defendants, against whom default judgment was entered, "failed to comply with the document retention provisions of ERISA, and ignored the Orders of th[e] Court directing audits and discovery"; court finds there was an "absence of evidence from the employer to demonstrate that the estimate is inaccurate").

In addition, defendants previously asserted that the original Audit Report erroneously included eight Alpha Omega employees who are not covered by the CBA. See 8/30/21 M&O at 14, DE #93 ("defendants have disputed that specific employees included in the auditors'

report were covered by the collective bargaining agreement, and thus whether defendants owed contributions for them") (citing Declaration [of Anthony Frascone] in Opposition to Plaintiffs' Motion for Summary Judgment (docketed on Apr. 16, 2021) ¶ 3, DE #78-2).  Plaintiffs have provided evidence that four of these eight workers—Raymond Flavin, Salvatore Zambuto, Anthony Pezzullo, and Salvatore Rasizzi—are classified as Local 1 members, an allegation that now stands uncontested in light of defendants' default and implicit abandonment of their unsubstantiated assertion to the contrary.  See Kuzma Decl. ¶¶ 14-16, DE #115-1; Local 1 Employee Records (docketed on Apr. 16, 2021) at 2-5, DE #79-3.  With respect to the remaining four employees (i.e., Edmunde Duffy, Xavier Poulos, Cyheme Saunders, and Darris Watts), Alpha Omega has "admitted [that these individuals] worked as bricklayers or plasterers in the records Alpha Omega provided for the Beach Channel Project."  Kuzma Decl. ¶ 17, DE #115-1.  The Court therefore concludes that the Supplemental Audit Report properly includes the foregoing eight individuals in its estimate of unpaid ERISA contributions.

In sum, having reviewed the auditors' calculations for accuracy, and having determined that the Supplemental Audit Report adequately addresses defendants' challenges to the original Audit Report, the Court respectfully recommends that plaintiffs be awarded $726,654.78 in delinquent contributions with respect to Alpha Omega.

### ii.    *Frascone: Joint and Several Liability*

In addition to requesting that Alpha Omega be held liable for $726,654.78 in unpaid contributions, plaintiffs ask that Frascone be held jointly and severally liable with Alpha Omega for $445,110.85.  See Pl. 5/23/22 Mot. at 1; Kuzma Decl. ¶ 13, DE #115-1.  As noted earlier, the District Court previously held that the unpaid contributions to the IPF, the Pension

Fund, the Vacation Fund, and the Annuity Fund constitute ERISA "plan assets," based on the contractual language in the CBA, and that Frascone, as a fiduciary, is liable for these contributions.  See 8/30/21 M&O at 7-12, DE #93.  Having concluded that plaintiffs' Supplemental Audit Report accurately reflects the outstanding unpaid contributions owed to these particular funds, this Court recommends that Frascone be held jointly and severally liable with Alpha Omega for the contributions owed to these four fringe benefit funds.  See Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc., 18-CV-2475 (RJD) (ST), 2021 WL 7208997, at *10 (E.D.N.Y. Mar. 15, 2021) (recommending that the individual defendant be held jointly and severally liable with the defendant entity for unpaid contributions to the ERISA funds); Bricklayers Ins. & Welfare Fund v. J.K. Merillin Builders, Inc., No. 13-CV-1048 (ARR)(VVP), 2014 WL 6674404, at *1 (E.D.N.Y. Oct. 6, 2014) (individual ERISA fiduciary who failed to make contributions to funds was jointly and severally liable with company that was required to make contributions to those funds).

Nevertheless, contrary to plaintiffs' submissions, the contributions owing in connection with these four Funds total $429,014.49, not $445,110.85; the auditor erroneously included in the amounts due from Frascone $16,096.36 in amounts due in connection with the IPF PPA Special Assessment.  See Kuzma Decl. ¶¶ 10, 13, DE #115-1.  As these unpaid obligations were not among those that the District Court held were ERISA "plan assets," see 8/30/21 M&O at 7, 12, DE #93; see also supra note 12, the $16,096.36 sum should not be included in the judgment entered against Frascone.

B.    <u>Interest</u>

Under Section 502(g)(2) of ERISA, where an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at "the rate provided under the plan," or, if unstated, the rate prescribed in 26 U.S.C. § 6621. See 29 U.S.C. § 1132(g); Finkel v. Omega Commc'n Servs., 543 F.Supp.2d 156, 161 (E.D.N.Y. 2008).  Generally, prejudgment interest is "computed from the earliest ascertainable date the cause of action existed[.]"  N.Y. C.P.L.R. § 5001(b).  But "[w]here damages are incurred over a period of time, courts in this District often calculate prejudgment interest from a 'single reasonable intermediate date' during the audit period."  All Flooring Sols., 2020 WL 9814088, at *10 (citations omitted); see Triple A Grp., 708 F.Supp.2d at 287.

Here, plaintiffs request that the Court award interest on the total amount of unpaid contributions owed by Alpha Omega at the rate set forth in the CBA—i.e., 10 percent per annum—beginning from the midpoint of the Audit Period.  See Kuzma Decl. ¶ 11, DE #115-1; see also CBA art. III § 9(c), DE #77-5 at 12, 43.  In the Supplemental Kuzma Declaration, plaintiffs do not specify the manner in which interest was calculated on the revised unpaid contributions amount.  See generally Kuzma Decl., DE #115-1.  In connection with the original Audit Report, however, plaintiffs previously explained that the interest on the unpaid contributions was calculated by multiplying the total principal owed by Alpha Omega by 10 percent, dividing the resulting number by the number of days in the year, and then multiplying that sum by the number of days between the midpoint of the Audit Period and the filing of the then pending motion.  See 1/13/21 Kuzma Decl. ¶ 28, DE #77-4.  This method is consistent with the one "previously espoused in this District[,]" and the Court therefore recommends that

20

it be applied here as well.  Tanachion Elec. Contracting, 2019 WL 4578959, at *3 ("taking the number of days for which interest is due and multiplying it by the daily interest rate (the amount of delinquent contributions × . . . (yearly interest) / 365 days)").  As to the accrual date, the Court recommends using May 17, 2018, which is the midpoint of the Audit Period (i.e., October 1, 2016 to December 31, 2019).  See, e.g., All Flooring Sols., 2020 WL 9814088, at *10 (recommending the audit period midpoint as the accrual date).

Applying the above principles to the facts established by the audit reports, this Court recommends an award of interest at a daily rate of $199.08 ($726,654.78 x .10 / 365 days), to be calculated from May 17, 2018[14] until the entry of judgment.  See, e.g., id. at *10-11.

### C.    Liquidated Damages

Plaintiffs request liquidated damages in the amount of 20 percent of unpaid contributions to the ERISA Plans.  See Compl., *ad damnum* clause; Kuzma Decl. ¶ 11, DE #115-1.  In an ERISA action such as this, a plaintiff is entitled to recover an additional damages amount equal to the greater of the interest due on unpaid contributions or liquidated damages in an amount provided for by the plan, not to exceed 20 percent of the delinquent contributions due to the plan.  See 29 U.S.C. § 1132(g)(2)(C).  Here, the CBA authorizes liquidated damages in the amount of 20 percent of delinquent contributions, which is the maximum amount permitted by statute.  See id.; CBA art. III § 9(c), DE #77-5 at 12, 43 ("If litigation is instituted by service of summons and complaint . . . , the Employer agrees to pay liquidated damages of twenty (20%) percent of the amount owing plus accrued interest.").

---

[14] Plaintiffs' calculation of the midpoint—May 16, 2018—is off by one day.  See Kuzma Decl. ¶ 11 n.2, DE #115-1.

Therefore, plaintiffs should be awarded $145,330.95 (.20 x $726,654.78) in liquidated damages against Alpha Omega.

### D.    Attorneys' Fees and Costs

#### i.    Attorneys' Fees

ERISA provides for an award of attorneys' fees where, as here, plaintiffs have obtained a favorable judgment under Section 515.  See 29 U.S.C. § 1132(g)(2)(D).  While the Complaint requests attorneys' fees, the pending motion for default judgment neither seeks attorneys' fees, nor provides any documentation to substantiate such a request.  See generally Pl. 5/23/22 Mot.; Kuzma Decl., DE #115-1.  Accordingly, the Court recommends that no attorneys' fees be awarded.[15]

#### ii.    Audit Costs

"Requests for audit fees are generally determined by utilizing the same standards the court applies in awarding attorneys' fees."  Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Alp Stone, Inc., No. 12-CV-5974 (NGG)(RER), 2015 WL 4094615, at *8 (E.D.N.Y. June 17, 2015) (internal quotation marks and citations omitted), adopted, 2015 WL 4112449 (E.D.N.Y. July 7, 2015); accord Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone & Tile, Inc., 17-CV-3187 (NGG) (RER), 2022 WL 2063267, at *17 (E.D.N.Y. June 8, 2022); All Flooring Sols., 2020 WL 9814088, at *12.  The party requesting reimbursement of an audit fee must therefore provide the Court with information as to the rates charged and the hours expended by the auditor(s).  See Alp Stone, 2015 WL 4094615, at *8; All Flooring Sols., 2020 WL 9814088, at *12.  The records provided must be "sufficient to allow the court to determine the

---

[15] In the alternative, the Court recommends that plaintiffs be granted leave to submit a separate application for attorneys' fees with the appropriate documentary support.

reasonableness of the audit costs." <u>Morin v. Nu-Way Plastering Inc.</u>, No. CV 03-405(LDW)(ARL), 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005).

Based on the record in this case, plaintiffs appear to have initially sought $16,953.65 in audit fees in their original Audit Report.  <u>See</u> Audit Report at 2, DE #115-2.  Yet, in the Kuzma Declaration (which was submitted in support of plaintiffs' 5/23/22 motion for default judgment), plaintiffs fail to include this amount in their total damages request.  <u>See</u> Kuzma Decl. ¶¶ 10-13, DE #115-1.  In any event, plaintiffs have not provided the Court with any details or the requisite documentation setting forth the auditor's hourly rate, the number of hours worked, and/or any expenses incurred.  Thus, plaintiffs should not be awarded damages for costs related to the audit reports.

### iii.    Other Costs

According to their papers, plaintiffs do not seek any other costs.  <u>See</u> <u>generally</u> Pl. 5/23/22 Mot.; Kuzma Decl., DE #115-1.  Nevertheless, the Complaint includes a request that Alpha Omega reimburse plaintiffs for the $400 filing fee, <u>see</u> Compl., *ad damnum* clause, and the Court may "take judicial notice of the District's filing fee as a cost[,]" <u>Dominic Schindler Holding, AG v. Moore</u>, 20 Civ. 4407 (RPK) (VMS), 2022 WL 987428, at *10 (E.D.N.Y. Jan. 12, 2022) (citation omitted).  Because the docket reflects that plaintiffs paid this fee, <u>see</u> DE #1, the Court recommends that they be awarded $400 in costs against Alpha Omega.

### CONCLUSION

For the foregoing reasons, this Court respectfully recommends that judgment be entered against Alpha Omega, awarding plaintiffs $726,654.78 in unpaid ERISA contributions; prejudgment interest on this amount at a daily rate of $199.08 from May 17, 2018 until the

entry of judgment; $145,330.95 in liquidated damages; and $400 in costs.  The Court further recommends that judgment be entered against Frascone and that he be held jointly and severally liable with Alpha Omega for $429,014.49 of the total unpaid ERISA contributions.

Any objections to this Report and Recommendation must be filed with the Honorable Edward R. Korman on or before November 28, 2022.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is respectfully requested to docket this Report and Recommendation into the ECF court file and to send copies to defendants at the following addresses:

> Anthony Frascone
> 68 Waters Edge
> Congers, New York 10920
>
> Alpha Omega Building Corp.
> c/o Anthony Frascone
> 711 Executive Boulevard, Suite C
> Valley Cottage, New York 10989
>
> Alpha Omega Building Corp.
> c/o Anthony Frascone
> 68 Waters Edge
> Congers, New York 10920
>
> Alpha Omega Building Corp.
> 580 5th Avenue
> New York, New York 10036
>
> Anthony Frascone and Alpha Omega Building Corp.
> c/o Lawrence A. Garvey, Esq.
> 317 S Little Tor Road
> New City, New York 10956

Anthony Frascone and Alpha Omega Building Corp.
c/o Lawrence A. Garvey, Esq.
235 Main Street, Suite 630
White Plains, New York 10601

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**November 10, 2022**

/s/ ***Roanne L. Mann***
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**